Good morning, everyone. Welcome to the Ninth Circuit. We're anxious to hear your arguments. I assume, Gwen, you've talked about cell phones? Okay. They're all off, right? If one rings, the rule is we get it. First case on for argument is Eason v. Fallman. Are counsel ready? Good morning, Your Honors. Good morning, Madam Clerk, colleagues. This case is about the converse of the constitutional right of inmates' access to attorneys. As cited in the opening brief, quote, inmates have a constitutional right of access to an attorney. It is the policy of this department to facilitate both correspondence and personal consultation for this purpose. Fifteen CCR, paragraph 3175. Now, this is a converse of that because it's based on the right of the attorney, Easton, to have access to inmates. Well, is there a constitutional right of access to clients or inmates? That's the problem. It has to go under the rubric of the First and Fourteenth Amendments because the constitutional right belongs to inmates for the access to attorneys. But the prison can enteed that by selecting, as they did in this case, attorneys who have cases that annoy them and cut them off from communication, as they did. This case is really very simple. It was a motion for summary judgment. Defendants prevailed. However, the district court was in error because there was not any admissible evidence to support that judgment. None at all. All the alleged evidence of the allegations of abuse of legal mail by Easton was based on the hearsay and double hearsay declaration of Tom Felker. That's in the excerpts of records. Number six, that entire declaration is lacking for any evidence of any wrongdoing on the part of Easton. Felker was not a recipient witness. Felker had no contacts with Easton. Now, the district court agreed that the CDC's stack of exhibits, as they quoted, was hearsay and could not be considered. This is at the excerpts of records 11 at page six. In connection with the summary judgment motions, defendants submitted a stack of exhibits that are not accompanied by authenticating declaration. Accordingly, the court may not consider them. Period. Then on page eight, that same order, which is the order of the motion for summary judgment, the judgment, Felker's declaration, the documents attached to it, however, established what Canberra knew at the time. He made a decision to ban plaintiff from visiting Pelican Bay and later from corresponding with any Pelican Bay inmates. In other words, they are offered not for the truth of the matters asserted. That is, the plaintiff did, in fact, do what Felker accused him of doing, but rather to show what defendants believed plaintiff had done. I don't understand how that declaration can show Canberra, Warden Canberra's state of mind. Do I understand? Tell me if I understand the sequence of the general sequence of events correctly. The ban occurred after you were convicted of a misdemeanor. Absolutely not. The ban was before I was even noticed that there was going to be a trial. I heard from a newspaper reporter. The ban was in the beginning, September 27th, I believe, 1996. The trial took place in December. After that, they put in a ban on mail. The mail ban began in January 7th or 15th. The visitation ban was prior. The mail ban was after. Yes. The visitation ban began in September of 96. The mail ban began in January of 97. And at some point that conviction was overturned on Haiti. Two years later, in 1998, in October, it was overturned. What's the present status of the visitation and the mail ban? It took five years to stop that. I want to hear the history. I want to know what the present status of the visitation and mail ban is. They're off. They're off. They were only on for five years. And you're now able to visit inmates at Pelican Bay and other correctional facilities? Yes. Including inmates who are not yet your client? Ah, well, that's a sore point. The prison tries to claim you can't have access to inmates unless you have an authorization from them. I think that's absolutely wrong. But from time to time they enforce that against me, but not against other attorneys. Okay. May I reserve the rest of my time? Unless you'd like to hear about Sturm, the only case that involves First Amendment rights of attorneys. If you'd like to reserve your time, it's your time. You're perfectly capable of doing so. The problem with all that inadmissible evidence is it did prejudice the court's mind. The court flip-flopped on Sturm, and after reading all the garbage and then saying it wasn't admissible, nevertheless, it had, as I point out in the AOB, initially thought Sturm was controlling. It then changed its mind, and I assert as a result of reading the garbage, which is only secondhand in Felker's hearsay declaration. You can read about the garbage, but the garbage itself was kept out except for his referring to it. That's still inadmissible. It still prejudices judges, and it would prejudice you if you read it carefully. Felker's declaration is an abomination. It should not have been admitted, and it cannot support a motion for summary judgment. I'd like to reserve the rest of your time, please. Thank you. Okay, I understand that you've agreed to divide your time. Is that right? Yes. Okay. Who's going first? And you're Mr. Walsh? May it please the Court, I'm Brian Walsh, Deputy Attorney General, representing the California Department of Corrections Defendant's Appeals. All roads today lead to qualified immunity. Different roads, the same result. The visiting ban, no clearly established right, qualified immunity. The correspondence ban, no clearly established right, and even if there were, under Turner, any right Mr. Easton may have had is properly limited because of the security and safety concerns. If we analyze this under Turner, if that's the appropriate constitutional analysis, and I gather that's your position is that Turner is the rubric we have to look under, and if the district court truly did consider inadmissible evidence, why don't we have to remand it for further factual findings on that? I gather you dispute that the evidence is inadmissible? Well, there are undisputed facts which alone would support our position on the Turner analysis. It is undisputed that Mr. Easton wrote letters to inmates disclosing the names, prison numbers, and housing locations of inmate witnesses. It is undisputed that Pelican Bay is the highest security level institution. On those facts alone, Turner would apply and be valid. The safety and security of Pelican Bay Prison, the highest level of security, is a legitimate penological goal, and it is Mr. Easton's burden to prove that Turner does not apply and that is not a legitimate penological goal. Well, taking the two undisputed facts, wouldn't under Turner we have to examine or the district court would have to examine whether or not it was narrowly tailored to achieve those penological goals? Well, Turner would have to look at all four prongs. Right. We've already discussed the valid rational connection. Regarding alternative means, there was no ban on inmates telephoning him. Right. Under the recent case of Overton v. Bezzetta, the alternative means need not be ideal. They did, however, exist. It's important to consider the totality of the circumstances here, that there was a very serious threat to the life of an inmate and the issue of diverting scarce prison resources to maintain security. Therefore, the impact would be unacceptable because it is so large. Finally, there is no ready minimal cost alternative available. So even on undisputed facts, our position is that Turner makes any limitation of a right valid. Regarding whether a law was clearly established regarding the visiting ban, Mr. Easton admits in the very first heading of his opening brief, this is a case of first impression for the Ninth Circuit. I believe that that establishes that there is no clearly established right. Circuit law that exists is conflicting. Sturm is from the Third Circuit and, therefore, cannot be controlling law. Sturm may be considered, but there are conflicting cases, and Sturm may also be distinguished because it is not about attorney access and it is not about safety and security concerns. The Seventh Circuit and circuit refers to the right of entry to a prison as an inhibition of action and not a right. Regarding communications, there is no established right for an attorney who has breached security through written communication to continue to correspond. As I said, to the extent that Mr. Easton has a right to communicate with inmate clients, that right also is properly limited by Turner. The Overton decision affirms that the safety and security of a penal institution are the most important goals. It also affirms that Turner is properly applied when safety and security are at issue. The district court was correct. Qualified immunity should apply. If the court has no further questions, we'll submit on the briefs. Thank you.  Good morning. I'm John Breeze on behalf of Defendants Vollman and Barton. Defendant Vollman was the district attorney who was responsible for the criminal trial, and Mr. Barton was an investigator. Their involvement in this case is removed and distinct from the access issues that have been raised in argument here today. Basically, there are two basic claims that are made, that the district attorney didn't do enough to investigate to try and determine whether this inmate, Taylor, was a credible witness before charging him with the criminal complaint. There were a number of other inmates who had come forward, and only one conviction was found by the jury, the misdemeanor conviction, based on Taylor's testimony. Nonetheless, it's our position that the filing of the complaint is within the province of absolute immunity. There is no duty to go out and test the credibility of your witness. Obviously, a district attorney should do that, but if they don't, they're at risk of losing the case. But it doesn't give rise to civil liability. The other area where Mr. Easton had some complaint against the Dalmar County defendants arises from the fact that he feels or alleges that this what he calls exculpatory evidence was not given to him quickly enough once it was received, and he claims in his complaint they got it in November of 1997. There's no proof of when they got it. It's based on a letter that went out to inmate Taylor saying, the CDC is doing an investigation. They're looking into this. If there is evidence that shows you lied, we've got to give that to Mr. Easton. Well, Mr. Easton got that evidence in June of 1998, a month or two after he filed his petition for writ of habeas corpus, and four or five months before the petition was granted. It's our position that that post-trial action, if you will, also falls within the province and the umbrella of the absolute immunity. And then the third issue involving these defendants deals with whether or not the district court abused its discretion in refusing to allow the filing of the Sixth Amended Complaint. And essentially, there is no new allegation in the Sixth Amended Complaint other than an allegation. And I think what happens is in the Third Amended Complaint, Mr. Easton does not allege that the district attorney defendants knew anything or had any contact or any information that Taylor may have been lying. So by the time we get to the Sixth Amended Complaint, Fifth Amended Complaint, which isn't at issue here, but it started in that complaint, then he starts alleging on information and belief that Barton and Fahlman probably knew about this bad information and created a conspiracy with the CDC defendants. The court found, number one, that the pleadings were not specific enough to raise allegations of a conspiracy. Also, there was prejudice given the time. And in fact, in May of 2000, Mr. Easton admitted in a deposition that his claim of a conspiracy with the CDC defendants based on the Third Amended Complaint was just inference and speculation. He didn't really have any facts anyway. And although that questioning in the deposition was dealing with the Third Amended Complaint, he can't bootstrap in Fahlman and Barton later. In essence, there's no evidence of any conspiracy, and the pleading standard wasn't met. The court was proper in not allowing the filing of the Sixth Amended Complaint. Thank you. Thank you for your argument. Rebuttal, Mr. Easton. Thank you, Your Honors. Only one comment about Mr. Breese's point about the Sixth Amended Complaint. It did attach a document, and then his quote about the deposition of Easton applied only to Watkins. It did not apply to anybody else in CDC or the DA's office. The more important one here, of course, is the attorney general's attack based on qualified immunity. But as I've tried to point out, the qualified immunity was based entirely upon inadmissible evidence, which was basically garbage, which if you read it, you become quite prejudiced. Furthermore, it wasn't from Warden Canberra who made the decisions. Warden Canberra is the author of the decision to ban Easton from visiting in September of 96 and from mail in January of 97. There is no deposition. There is no affidavit. There is nothing from Warden Canberra. At the end of the day, wouldn't you have to agree with the state that the proper analysis of this claim is under Turner v. Safley? Turner is interesting. I mean, you're arguing for a freestanding right of access by counsel, but even if we were to reach that issue and say there was such a freestanding right, it certainly wasn't clearly established at the time. No, no, there is no freestanding right, and that's only the allegation of defendants. I didn't make that. What I have said or what was pointed out is that inmates have a constitutional right of access to attorneys, and that is Title 15. They knew that. It's a Sixth Amendment right, I assume. Although it's a different case, Murphy v. Shaw is sort of instructive, and that's the case of inmate-to-inmate communication. One inmate wanted to communicate with others. He was a paralegal. And they said, no, you have no First Amendment right to communicate with other inmates. It's subject to a Turner analysis. And I think it seems to me that at the end of the day we're down to a Turner analysis and we're just down to whether or not there's enough to support the district court's summary judgment. If Warden Camber attempted to fashion a remedy, as they did in Sturm, in Sturm they didn't like her being in the general population visiting room because inmates would come up to her and they claimed she was soliciting. So they fashioned a remedy that was to exclude her on the weekends when the inmates were in general population. She could come during the week and meet with her inmate clients. That was rational in a sense, but the court still struck it down for all the reasons that you find in the opinion of Sturm, which the district court found persuasive until it read the garbage submitted by CDC, the inadmissible stack of exhibits that were nothing but character assassination, the secret dossier that Pelican Bay had kept for years without any ability for me to answer any of that stuff at the time when it was fresh in my mind. So this whole thing is based on inadmissible documents, exhibits, and you can't have qualified immunity based on that sort of trash. It must go back on the grounds that the summary judgment is not appropriate with inadmissible documents, nor is qualified immunity. Both of them required admissible affidavits testifying to facts of personal knowledge, not somebody else's knowledge. Thank you very much. Okay. Thank you for your argument. Case just argued will be submitted for decision. We'll proceed to the next case on the docket, which is Cunningham against Bloxham.
judges: Hawkins, Thomas, Clifton